USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _6/29/2020_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DROR NISSIM,

                                    Petitioner,

            -against-                                    **1:18-cv-11520 (ALC)**

ORNA KIRSH,                                              **OPINION & ORDER**

                                    Respondent.

**ANDREW L. CARTER, JR., United States District Judge:**

On July 26, 2019, the Court granted Petitioner Dror Nissim's petition for return of a child. *See* ECF No. 48.  Petitioner then filed the instant motion for attorneys' fees and costs. *See* ECF No. 51.  For the reasons set forth below, Petitioner's motion is hereby **GRANTED** to the extent indicated in this Opinion & Order.

## BACKGROUND

The Court assumes the Parties' familiarity with the facts and procedural history of this case. A brief overview of the facts and history relevant to the instant motion are provided below.[1]

Petitioner Dror Nissim ("Dror"), an Israeli citizen, and Respondent Orna Kirsh ("Orna"), a dual United States and Israeli citizen, were married in 2008 and had a Child who was a dual United States and Israeli citizen born in Israel. Opinion & Order on Petitioner's Motion for Return of a Child ("Opinion & Order") (ECF No. 48) at 4.  In 2018 Dror and Orna decided to move to California because Dror received a promotion that required relocation. *Id.*  Orna and the Child traveled to California one week ahead of Dror to prepare the living arrangements and prepare for

---

[1] For a more detailed recitation of the Court's findings of fact and the procedural history of this case, *see* ECF No. 48.

the start of the Child's school. *Id.*  However, while in California, Orna had a "revelation" that she wanted to leave her husband and live in New York with her child. *Id.* at 5.  Without informing her husband she took the Child and moved to New York. *Id.*

Dror filed a petition for return of a child pursuant to the Hague Convention and the International Child Abductions Remedies Act ("ICARA"). *See* Petition for Return of Child (ECF No. 1).  During the pendency of the litigation, the Parties reached a visitation agreement that required Dror to travel to New York for extended visits with the Child. *Id.*  After extensive briefing, written testimony, and an evidentiary hearing with testimony from both Dror and Orna, the Court concluded that the Parties intended to move and live together in California and then to return to Israel. *Id.* at 5.  The Court also concluded that the Child's habitual residence is Israel, that the retention of the Child by Orna was wrongful, and that none of the exceptions to the Hague Convention apply.  Accordingly, the Court ordered that the Child be returned to Israel. *Id.* at 19.

The Court issued its Opinion & Order on July 26, 2019. ECF No. 48.  Petitioner filed his documentation in support of his request for attorney fees and costs on September 5, 2019. ECF No. 51.[2]  Respondent opposed on October 3, 2019. ECF Nos. 57.  Petitioner replied on October 17, 2020. ECF Nos. 58–59.  Respondent filed a sur-reply on October 25, 2019. ECF No. 62.

---

[2] Respondent argues that Petitioner's motion was untimely because he failed to comply with Federal Rule of Civil Procedure 54(d)(2)(B), which requires motions for attorneys' fees to be filed no later than 14 days after the entry of judgment.  Petitioner, on the other hand, argues that he timely requested attorneys' fees in his Proposed Findings of Fact and Conclusions of Law. *See* Proposed Findings of Fact and Conclusions of Law (ECF No. 45) at 25 ( requesting "an Award of all legal costs and fees and all costs of repatriation, including but not limited to the costs of exercising access in New York, pursuant to this Court's provisional measures, as required by 22 U.S.C. 9007").  Petitioner also argues that FRCP 54(d)(2)(B) is prefaces with "[u]nless a statute or a court order provides otherwise," and that Petitioner's request is pursuant to ICARA, 22 U.S.C. § 9007(b)(3) which intentionally does not include a time limit on attorneys' fees.  After considering thes same arguments in the Parties' letter briefs, *see* ECF Nos. 51-52, 55, the Court rejected

**STANDARD OF REVIEW**

The International Child Abduction Remedies Act ("ICARA") provides that "[a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3).  The Hague Convention provides that "[u]pon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by . . . the applicant." *See* Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89. "Although Article 26 of the Hague Convention provides that a court 'may' award 'necessary expenses' to a prevailing petitioner, [ICARA] shifts the burden onto a losing respondent in a return action to show why an award of 'necessary expenses' would be 'clearly inappropriate.'" *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (citation omitted).

ICARA retains the equitable nature of cost awards. *Id.*  That is, "the appropriateness of such costs depends on the same general standards that apply 'when attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).  In considering whether expenses are "clearly

---

Respondent's argument but granted Respondent additional time to respond to Petitioner's motion for attorneys' fees.

inappropriate," courts in this Circuit consider factors including: (1) whether there was "a reasonable basis for removing the children to the United States," *Ozaltin*, 708 F.3d at 375; (2) whether either party "engaged in forum shopping," *id*; (3) "the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition," *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016); (4) "a respondent's inability to pay an award," *id.* at 81; (5) whether fees and costs will "deter such conduct from happening in the first place," Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-501, 10511 (Mar. 26, 1986); and (6) whether the case is "not a 'difficult one' and 'falls squarely within the heartland of the Hague Convention," *see Duran-Peralta v. Luna*, No. 16-CV-7939, 2018 WL 1801297, at *2 (S.D.N.Y. Apr. 2, 2018) (quoting *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010)).

As for the appropriate amount of attorneys' fees and costs, "[b]oth the [Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  The purpose of ICARA's fee-shifting provision is "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and "to deter such conduct from happening in the first place." Hague Convention, 51 Fed. Reg. 10494-501, 10511.  Accordingly, "the court . . . has the obligation to determine whether the requested fees and costs were 'necessary' to secure the child[]'s return." *Sanguineti v. Boqvist*, No. 15-CV-3159, 2016 WL 1466552, at *2 (S.D.N.Y. Apr. 14, 2016) (quoting *Aldinger v. Segler*, 157 Fed.Appx. 317, 318 (1st Cir. 2005)).

4

**DISCUSSION**

Petitioner seeks $128,408.20 in legal fees, costs, and expenses, and an additional $14,742.14 in travel expenses associated with court appearances, the provisional parenting schedule, and return of the Child to Israel.

I.   **Attorneys' Fees and Costs**

Petitioner's request for attorneys' fees, expenses, and costs is not "clearly inappropriate." Respondent's conduct—of removing the Child whose habitual residence is Israel, without the consent of the father, and then deliberately misleading the father about the Child's whereabouts— falls "squarely within the heartland of the Hague Convention." *Duran-Peralta v. Luna*, No. 16-CV-7939, 2018 WL 1801297, at *2 (S.D.N.Y. Apr. 2, 2018) (quoting *Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010)).   The Hague Convention was adopted "to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." *Gitter v. Gitter*, 396 F.3d 124, 129 (2d Cir. 2005).  In this case, it did exactly that.  The Child who was wrongfully removed from Israel was returned after Petitioner brought this action.

Many of the equitable factors that courts consider in awarding fees and costs weigh in favor of awarding them here.  First, Respondent wrongfully removed the Child and unilaterally moved to New York without any reasonable basis for believing that the move was appropriate.[3]  *See*

---

[3] Respondent again argues that the 2009 Agreement between the Parties is controlling and provided a reasonable basis for her to believe that removal was authorized and consented to by Petitioner. *See* Respondent's Memorandum of Law in Opposition to Petitioner's Motion for Attorney's Fees and Costs ("Opp. Memo") (ECF No. 57) at 10 ("Respondent remained in the United States with the Child on her good faith belief that Petitioner had consented to the relocation to the United States.").  The Court addressed and dismissed this argument in its Opinion & Order and explained why that Agreement was not indicative of the Parties' last shared intent. *See* Opinion & Order at

*Ozaltin*, 708 F.3d at 375.  Petitioner did not consent to the removal nor was it authorized by law.  *See* Opinion & Order at 14 ("[Respondent] made the unilateral decision to move the Child to New York while [Petitioner] was on an airplane and completely unaware.").   Second, neither party engaged in forum shopping, and this District was an appropriate forum for the case as the Child was removed to Manhattan. *See Ozaltin*, 708 F.3d at 375.  Third, as discussed further below, Respondent has the ability to pay attorneys' fees, costs and expenses.  And finally, Respondent's unilateral action was the cause of the petition for return and Petitioner did not cause the accumulation of the costs or fees. *See Souratgar*, 818 F.3d at 79.  The Court finds that the totality of the equitable factors weigh in favor of awarding attorneys' fees and costs to Petitioner.

## II.   **Amount of Attorneys' Fees and Costs**

Next, the Court turns to the amount of attorneys' fees, expenses, and costs.  District courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (citation and quotation marks omitted).  The Court first calculates the lodestar amount, keeping in mind that the purpose of ICARA's fee-shifting provision which is to "restore the applicant to the financial position he or she would have been in had there been no removal or retention." Hague Convention, 51 Fed. Reg. 10494-501, 10511.  Courts determine the "reasonable hourly rate" by considering case-specific variables such as the complexity of the case, the amount of work required, the attorney's experience, and awards in similar cases. *Arbor Hill*, 522 F.3d at 190.  Courts determine

---

16 ("Booking plane tickets for the precise time [Petitioner] would be in the air, sending texts insinuating her and the Child's presence in California, and leaving a lone note in an otherwise empty apartment are actions inconsistent with the belief that her actions were protected by the 2009 Agreement.").

the reasonableness of the hours expended by looking to their "familiarity with the case and []

experience with the case and [] experience generally as well as the evidentiary submissions and

arguments of the parties." *Alexander v. Amchem Prod., Inc.*, 07-CV-6441, 2008 WL 1700157, at

*3 (S.D.N.Y. Apr. 3, 2008) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (quotation

marks omitted).

### A.  **Reasonableness of Hourly Rate**

Generally, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay

. . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to

litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  Petitioner requests the following hourly

rates: Patricia Apy ($500/hr); Michael J. Fleres ($275/hr); Elissa A. Perkins ($225/hr); and

paralegal Amy Broza ($150/hr).

Patricia E. Apy has litigated complex international child custody cases and served as an

expert in these cases for nearly 30 years. *See* Petitioner's Motion for Attorneys' Fees and Costs

(ECF No. 51) at 10.  She is a principal author of the Sean and David Goldman International Child

Abduction Prevention and Return Act (ICAPRA), 22 U.S.C. 9111, et seq., and has served as a

witness before Congress on legislation related to the reporting requirements of the United States

Department of State. *Id.* at 11.  Ms. Apy is a founding partner of her firm and is recognized as an

expert on the Hague Convention, ICARA, and other international child custody litigation matters.

*Id.* at 10.  Considering Ms. Apy's experience and the time required to litigate this case—including

litigating a temporary restraining order, preparing for and conducting an evidentiary hearing, and

researching foreign legal issues—an award at the high end of fees generally awarded by courts in

this District for Hague Convention cases is appropriate.  Notably, "courts in this District have not

awarded more than $425 per hour in a Hague Convention case." *Duran-Peralta v. Luna*, No. 16-CV-7939, 2018 WL 1801297, at *2 (S.D.N.Y. Apr. 2, 2018) (collecting cases). The Court finds that a fee of $425/hr is reasonable and in line with awards for similarly experienced attorneys in similar cases. *See e.g.*, *In re One Infant Child*, No. 12-CV-7797, 2014 WL 704037, at *4 (S.D.N.Y. Feb. 20, 2014), *rev'd sub nom. Souratgar v. Lee Jen Fair*, 818 F.3d 72 (2d Cir. 2016).

Mr. Fleres, an associate counsel with fourteen years of experience in matrimonial litigation and family law, requests $275/hr. Ms. Perkins, an associate attorney with ten years of experience and who serves on the Young Lawyers Sub-Committee of the New Jersey State Bar Association Family Law Executive Committee, requests $225/hr. Considering their experience litigating cases such as this one and their expertise in the subject matter, and in light of the considerations discussed above, this Court finds that $275/hr. is a reasonable fee for Mr. Fleres and $225 is reasonable for Ms. Perkins. *See, e.g.*, *In re One Infant Child*, 2014 WL 704037 at *4 (awarding $300 per hour to a "fourteen year associate"). Finally, Ms. Broza, a paralegal with over thirty-five years of legal experience, requests $150/hr. The Court finds that in light of the difficulty of this case and the factors discussed above, $150/hr is reasonable for Ms. Broza. *See e.g.*, *Sanguineti*, 2016 WL 1466552, at *4 (collecting cases to support a rate of $129 per hour for paralegal work).

## B. **Reasonableness of Hours Expended**

The Court must "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 190 F.3d 111, 116 (2d Cir. 1997) (citations omitted). The relevant inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

According to Petitioner, Ms. Apy spent 168.7 hours of billable time in the matter, Mr. Fleres spent 26.4 hours, Ms. Perkins spent 6.1 hours, and Ms. Broza spent 53.6 hours. The Court finds that this total amount of 201.2 hours of attorney time and 53.6 hours of paralegal time is reasonable given the difficulty of the legal issues in this case, the protracted nature of the litigation, and the quality of lawyering by Petitioner's counsel. As Petitioner's detailed invoices and accounting indicate, litigating this case involved researching foreign legal issues, preparing for and conducting an evidentiary hearing, coordinating with the State Department and Israeli authoritieis, and drafting numerous correspondences to the Court. *See e.g.*, *matter of JR*, No. 16-CV-3863, 2017 WL 74739, at *2 (S.D.N.Y. Jan. 5, 2017) (finding 557.3 hours reasonable given the "unusual nature of a Hague Convention case—in particular its international character, the need to gather evidence in a non-English speaking country, and the need to prepare for and try the case expeditiously."). Moreover, these hours are consistent with similar cases in this District. *See, e.g.*, *Duran-Peralta v. Luna*, No. 16 CIV. 7939 (JSR), 2018 WL 1801297, at *5 (S.D.N.Y. Apr. 2, 2018).

Multiplying the hours expended by the hourly rates set forth above, the lodestar—i.e., the presumptively reasonable attorneys' fee—is $88,370.

C. **Amount of Costs**

Petitioner requests $27,905.48 in costs associated with litigating this action and $14,742.14 in travel expenses associated with court appearances, travel to New York for visitation, and the return of the Child to Israel. The costs include $6,500 for Israeli counsel Shmuel Moran, $14,625 in expert fees for Dr. Dov Frimer, $2,121.28 for translation services, $1,750 for a court interpreter, and $2,909.20 for costs including pleading charges, attorney transportation, transcript costs, and

filing fees.  Respondent contests several of these costs, including the $6,500 for Mr. Moran and the $14,625 for Dr. Frimer. *See* Opp. Memo at 3.

The Court concludes that the costs of Dr. Frimer's testimony and Mr. Moran's fees should be excluded.  Dr. Frimer provided the Court with seven pages of written testimony, *see* ECF No. 36, and Mr. Moran conducted work and filed documents in Israel.  Neither Dr. Frimer nor Mr. Moran represented Petitioner in the instant action, and they are "not entitled to be compensated for legal advice and strategy regarding [Petitioner's] case in this Court, nor may they recover for coordination between proceedings in this Court and other foreign tribunals." *In re One Infant Child*, 2014 WL 704037, at *5.  As another federal court noted regarding Dr. Frimer's testimony in a similar case: "Dr. Frimer did not represent Plaintiff in the instant action before this Court. There is no showing that Dr. Frimer is admitted to practice in the State of Michigan or before this Court. Plaintiff has not submitted any authority which allows this Court to award fees and costs incurred by an attorney who does not represent a party in an action before the Court." *Freier v. Freier*, 985 F.Supp., 710, 714 (E.D. Mich. 1997).  Moreover, the documentation submitted to account for Mr. Moran and Dr. Frimer's fees is inadequate.  The invoices are in Hebrew and do not provide information on the consultations aside from a single, block charge for "Fees." *See, e.g.*, *Sanguineti*, 2016 WL 1466552, at *5 (denying consultation fees and noting that "Petitioner provides scant documentation of the nature of these consultations, the date they occurred, or how petitioner paid for them.").

The Court will award Petitioner's remaining costs—including the costs of travel expenses associated with the visitation schedule, translation services, interpreter services, transcript costs, and filing fees—which are adequately documented and were "necessary expenses incurred by or

10

on behalf of the petitioner." 22 U.S.C. §9007(b)(3).  These costs are in line with ICARA's purpose to "restore the applicant to the financial position he or she would have been in had there been no removal or retention." Hague Convention, 51 Fed. Reg. 10494-501, 10511; *see also matter of JR*, 2017 WL 74739, at *3 (awarding costs including investigative expenses to locate the Child, travel expenses to attend an evidentiary hearing, travel expenses related to the child, court reporter fees, transcript charges, translation fees, interpreter fees, and hotel expenses).  The largest of these costs is $14,742.14 in expenses related to court appearances, travel to New York for visitation, and the return of the Child to Israel.  The Court reviewed 55 pages of documentation, receipts, and spreadsheets provided to account for these expenses and finds them to be reasonable.  The cost of flights and lodging in New York City were the direct result of both the visitation schedule put in place to allow Petitioner to exercise his parental access and the Child's repatriation to Israel.

   After subtracting Mr. Moran and Dr. Frimer's fees, Petitioner is entitled to $5,606.80[4] in costs associated with litigating this action and $14,742.14 in expenses related to court appearances, travel to New York for visitation, and return of the Child to Israel.

   D. **Inability to Pay**

   "[A] respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA." *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 81 (2d Cir. 2016).  The Parties dispute Respondent's ability to pay the costs and fees owed in this case. Petitioner argues that "[t]here is absolutely no rational basis that the Respondent has any inability

---

[4] Petitioner withdrew the application for reimbursement of car service related to attorney transportation. *See* Reply Memorandum in Further Support of Attorneys' Fees (ECF No. 59) at 6. The car service totaled $219.71 on 12/20/2018, $514.55 on 1/22/2019, and $439.42 on 3/1/2019. The Court accordingly deducted an additional $1,173.68 from the remaining cost of $6,780.48 for the final total of $5,606.80.

to pay," noting that Respondent owns three properties including one within the jurisdiction of this Court. *See* Reply Memo at 9.   Respondent, on the other hand, asserts that she jointly owns a property in New York, jointly owns (with Petitioner) an investment apartment in Bat Yam., owns an apartment in Tel Aviv, Israel, and jointly owns a bank account (also with Petitioner) in Israel with balances of $150,000. *See* Sur-Reply in Further Opposition to Motion for Attorneys' Fees (ECF No. 62) at 3.   Even crediting Respondent's assertions, she owns several properties, including an investment property, and the collective value of these properties greatly exceeds the total award of $108,718.94 in this case.   Moreover, as was discussed at the evidentiary hearing, Respondent had a successful and gainful career in Israel before moving to the United States and has earning potential in the future. *See* Transcript (ECF No. 41) at 33–34; *see also e.g.*, *Sanguineti*, 2016 WL 1466552, at *9 ("Respondent's background, education, and work experience all indicate that he has significant earning potential in the future.").

The Court finds that the total award does not exceed Respondent's total assets nor does it justify a downward departure. *Cf. Souratgar*, 818 F.3d at 81 n.3 ("[A]n expenses award that is greater than a respondent's total assets . . . at a minimum, require[s] a reasoned explanation.").

## CONCLUSION

For the reasons set forth above, Petitioner's motion for attorneys' fees and costs is hereby **GRANTED** to the extent indicated in this Opinion & Order.   The Clerk shall enter judgment in favor of petitioner for $20,348.94 in costs and expenses and $88,370 in attorneys' fees, for a total of $108,718.94.

**SO ORDERED.**

Dated:      June 29, 2020
            New York, New York

_____

**ANDREW L. CARTER, JR.**
**United States District Judge**